UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**FREDRICK ANDREW MORRIS,**

                Plaintiffs,

v.                                  Case No. 22-CV-716

**SGT. TONIA ROZMARYNOSKI,**

                Defendant.

---

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Fredrick Andrew Morris, who is incarcerated at Green Bay Correctional Institution (GBCI) and representing himself, brings this lawsuit under 42 U.S.C. § 1983. (ECF No. 1.) Morris was allowed to proceed on a claim under the Eighth Amendment for excessive force against defendant Sgt. Tonia Rozmarynoski for allegedly using OC spray on him when he was not acting aggressively. Rozmarynoski filed a motion for summary judgment for failure to exhaust administrative remedies. (ECF No. 38.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 6, 14.) The motion is fully briefed and ready for a decision.

**SUMMARY JUDGMENT STANDARD**

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act states in part that "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other

Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court and produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency because claims generally are resolved more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his administrative remedies when he filed suit instead of taking his grievance to the appropriate review board). To properly exhaust administrative remedies, prisoners must pursue each step in the administrative process. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (when a prisoner does not follow procedures his remedies are forfeited, not unavailable). "Exhaustion is an affirmative defense, with the burden of proof on the defendants." *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013).

*Relevant Procedure for Exhausting Administrative Remedies*

The Wisconsin Department of Corrections's (DOC) procedures for inmates exhausting administrative remedies are contained in Wis. Admin. Code Ch. DOC 310 (2018). "The purpose of this chapter is to afford inmates in institutions a process by which grievances may be expeditiously raised, investigated, and decided." Wis. Admin Code § DOC 310.01(1). The Inmate Complaint Review System (ICRS) is the main process an inmate must use to bring a grievance to the attention of the

3

institution. Wis. Admin Code § DOC 310.04. Before filing a formal written inmate complaint, "an inmate shall attempt to resolve the issue by following the designated process specific to the subject of the complaint." Wis. Admin Code § DOC 301.07(1). An inmate must file a formal written inmate complaint regarding whatever issue he wishes to raise within 14 calendar days of the conduct giving rise to the complaint occurring. Wis. Admin. Code § DOC 310.07(2). The complaint must clearly identify the issue the inmate seeks to complain about. Wis. Admin. Code § DOC 310.07(5).

Once an inmate files a complaint, the institution complaint examiner (ICE) may either accept, reject, or return the complaint. Wis. Admin. Code § DOC 310.10(2). A complaint may be rejected for any of the nine reasons stated in Wis. Admin. Code § DOC 310.10(6)(a)-(i). Within 10 days an inmate may appeal a rejected complaint to the appropriate reviewing authority. Wis. Admin. Code § DOC 310.10(10). A complaint may be returned within 10 days of receipt if it fails to meet the filing requirements, Wis. Admin. Code § DOC 310.10(5). An inmate has 10 days in which to correct any deficiencies. Wis. Admin. Code § DOC 310.10(5).

Once the ICE accepts the complaint, the ICE makes a recommendation to the Reviewing Authority. Wis. Admin. Code § DOC 310.10(12). The Reviewing Authority has 15 days after receiving the recommendation to either affirm or dismiss the complaint in whole or in part. Wis. Admin. Code § DOC 310.11(1)-(2). Within 14 days after the date of the reviewing authority's decision, an inmate may appeal the reviewing authority's decision to the Corrections Complaint Examiner (CCE). Wis. Admin. Code § DOC 310.12(1). Appeals may not exceed 500 words and may not exceed

4

two pages. Wis. Admin. Code § DOC 310.09(2)(e).

The CCE then has 45 days in which to make a recommendation to the Office of the Secretary of the DOC or to notify the inmate that more time is needed. Wis. Admin. Code § DOC 310.12(9). The CCE "may recommend rejection of an appeal not filed in accordance with § DOC 310.09." Wis. Admin. Code. § DOC 310.12(5). The Secretary then has 45 days following receipt of the CCE's recommendation in which to make a decision. Wis. Admin. Code § DOC 310.13(1). If an inmate does not receive a decision from the Secretary within 90 days of receipt of the appeal in the CCE's office, he may consider his administrative remedies exhausted. Wis. Admin. Code § DOC 310.13(4)

*Morris's Claims*

Morris was allowed to proceed on an Eighth Amendment excessive force claim against Rozmarynoski for spraying him with OC Spray when he was allegedly not being aggressive. In his original complaint Morris alleged that Rozmarynoski sprayed him on July 8, 2021. (ECF No. 8.) Morris then amended his complaint, alleging that Rozmarynoski sprayed him on July 9, 2021. (ECF No. 24.) Morris amended his complaint a second time, now alleging that Rozmarynoski sprayed him on July 14, 2021. (ECF No. 26.) The second amended complaint is the operative complaint.

The court notes that Morris has alleged that he was sprayed by OC spray on all three dates. On July 8, 2021, he alleges he was sprayed by non-defendant Captain Cushing. (ECF No. 41, ¶ 17.) On July 9, 2021, he states he was sprayed by Rozmarynoski, but as shown below, he was mistaken. (*Id.*, ¶ 7.) He also alleges that

5

Rosmarynoski sprayed him on July 14, 2021. (ECF No. 26.) Because the second amended complaint only alleged one incident of someone using OC spray on him, and that that incident occurred on July 14, 2021, that was the only claim that Morris was allowed to proceed upon after the screening of his second amended complaint. (ECF No. 36.) The defendants allege that Morris did not file an inmate complaint about the July 14, 2021, OC spray incident.

*Morris's Attempts to Exhaust His Administrative Remedies*

Rozmarynoski states that Morris never filed an inmate complaint asserting that Rozmarynoski sprayed him with OC spray on July 14, 2021. (ECF No. 41, ¶ 23.) However, Rozmarynoski acknowledges that Morris filed two inmate complaints related to being sprayed with OC spray around that time period.

The first inmate complaint, GBCI-2021-11870, was received by the ICE on August 2, 2021. (*Id.*, ¶ 6.) In that complaint Morris stated that on July 9, 2021, Rozmarynoski sprayed him with OC spray twice, even though he was not being disruptive. (*Id.*, ¶ 7.) Because Rozmarynoski was not working on July 9, 2021, Morris did not provide sufficient evidence to support his complaint and it was rejected. (*Id.*, ¶ 8.) Morris appealed the rejection, referring to the incident report connected with the July 9 incident. (ECF No. 45, ¶ 30; ECF No. 40-2 at 15-18.) The warden returned the inmate complaint to the ICE for further processing, noting that there was a use of force incident on July 8, 2021, already being investigated by supervisory staff that appeared to match Morris's allegations. (*Id.*, ¶ 10.) Inmate complaint GBCI-2021-11870 was dismissed because supervisory staff was already investigating the July 8,

6

2021, incident. (*Id.*, ¶ 11.) Morris timely appealed the dismissal, but it was upheld on appeal because of the other investigation. (*Id.*, ¶¶ 13-15.)

Morris states that, because he was in observation status at the time, he could not write his own inmate complaint and had to rely on another officer (not a defendant) to help him. (ECF No. 45, ¶ 4.) This officer put the wrong date—July 9—on the inmate complaint. (*Id.*) Morris acknowledges that he did not know the correct date of the incident, which is why in his appeal he referenced the incident report. (ECF No. 45, ¶¶ 30-32; ECF No. 40-2 at 15.) Morris states that the complaint examiners had access to the incident report and, if they had reviewed it, would have seen the correct date—July 14, 2021. (ECF No. 45, ¶¶ 31-32.) Morris did not know how to confirm or determine which day Rozmarynoski sprayed him, and all he could do was reference the incident report. (*Id.* ¶ 28.)

Rozmarynoski asserts that simply referring to the incident report with the correct date does not put the institution on notice about the use of force issue. (ECF No. 48 at 6.) Because the date was not clearly identified in Morris's appeal, the DOC did not have an opportunity to properly investigate the July 14, 2021, incident. (*Id.*)

The second inmate complaint, GBCI-2021-11876, was also received by ICE on August 2, 2021. (ECF No. 41, ¶ 16.) In that complaint Morris alleged that on July 8, 2021, Captain Cushing, not a defendant, sprayed him with OC spray. (*Id.*, ¶ 17.) This inmate complaint was dismissed because supervisory staff was already investigating the July 8 incident. (*Id.*, ¶ 18.) Morris appealed the dismissal, which was upheld because there did not need to be two investigations relating to the same incident. (*Id.*,

7

¶¶21-22.)

*Analysis*

A question of material fact exists as to whether the grievance process was rendered unavailable to Morris when the unnamed correctional officer wrote the wrong date on inmate complaint GBCI-2021-11870. An inmate can overcome his failure to exhaust his administrative remedies when he can demonstrate that the grievance process was unavailable to him. *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018). An inmate can show that a grievance process was unavailable when "(1) prison officials are 'consistently unwilling to provide any relief to aggrieved inmates'; (2) the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use;' or (3) prison administrators take affirmative action to thwart use of the grievance process," but these are "only examples, not a closed list." *Id.* (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016)).

Morris contends that, because he was on observation status, he could not draft his own inmate complaint. He needed to rely on a correctional officer to do so, and that correctional officer erroneously put the wrong date on the inmate complaint. Rozmarynoski disputes this. Taking the facts in a light most favorable to Morris, a reasonable factfinder could conclude that the correctional officer's mistake rendered the exhaustion process unavailable to him. *See Pyles v. Nwaobasi*, 829 F.3d 860, 866-67 (7th Cir. 2016) (holding that, where a prisoner was unable to exhaust his administrative remedies because of something not within his control, the exhaustion defense was unavailable).

8

A second question of material fact exists as to whether GBCI was put on notice that Morris was complaining about the July 14, 2021, incident. Morris states that, when he appealed the rejection of GBCI-2021-11870, he did not know the actual date of the incident but referenced the incident report that had the correct date. Rozmarynoski contends that the reference to the incident report was insufficient to put the institution on notice, pointing to the fact that the warden, in response to Morris's appeal of GBCI-2021-11870, directed the ICE office to investigate an incident that took place on July 8, 2021. Again, taking the facts in a light most favorable to Morris, a reasonable factfinder could conclude that the institution was put on notice because the incident report indicates that the July 14, 2021, incident had been reported to the institution via the conduct report.

The Seventh Circuit Court of Appeals has instructed that, when there are questions of fact regarding whether a prisoner exhausted the available administrative remedies, a court must conduct an evidentiary hearing to resolve the issue. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). At the hearing, the court "may hear evidence, find facts, and determine credibility. After finding facts, the district court may allow the claim to proceed or dismiss it for failure to exhaust." *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018) (citations omitted). Because there are two genuine issues of material fact, the court finds that an evidentiary hearing is necessary to determine whether the grievance process was made unavailable to Morris and whether Morris's appeal put the institution on notice of the July 14, 2021, incident.

9

## CONCLUSION

For the reasons stated above, the court will schedule a date and time for a status conference to discuss the logistics of an evidentiary hearing. Once the court holds the evidentiary hearing, it will issue a decision and order on Rozmarynoski's motion for summary judgment on the ground that Morris failed to exhaust his administrative remedies.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the clerk of court's office set a status conference to discuss the logistics of holding an evidentiary hearing.

Dated at Milwaukee, Wisconsin this 30th day of October, 2023.

BY THE COURT

*William E. Duffin*

WILLIAM E. DUFFIN
United States Magistrate Judge